# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LEBANON COUNTY EMPLOYEES' RETIREMENT FUND and TEAMSTERS LOCAL 443 HEALTH SERVICES & INSURANCE PLAN, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2021-1118-JTL |
| STEVEN H. COLLIS, RICHARD W. GOCHNAUER, LON R. GREENBERG, JANE E. HENNEY, KATHLEEN W. HYLE, MICHAEL J. LONG, HENRY W. MCGEE, ORNELLA BARRA, D. MARK DURCAN, and CHRIS ZIMMERMAN, | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| AMERISOURCEBERGEN CORPORATION, | ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION DENYING
## RULE 60(b) MOTION

Date Submitted: February 6, 2023
Date Decided: March 21, 2023

Samuel L. Closic, Eric J. Juray, Robert B. Lackey, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Gregory V. Varallo, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, Wilmington, Delaware; Lee D. Rudy, Eric L. Zagar, KESSLER TOPAZ MELTZER & CHECK, LLP, Radnor, Pennsylvania; Jeroen van Kwawegen, Eric J. Riedel, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York; Frank R. Schirripa, Daniel B. Rehns, Kurt Hunciker, Hillary Nappi, HACH ROSE SCHIRRIPA & CHEVERIE LLP, New York, New York; Gregory Mark Nespole, Daniel

Tepper, LEVI & KORSINSKY, LLP, New York, New York; Brian J. Robbins, Craig W. Smith, ROBBINS LLP, San Diego, California; *Counsel for Plaintiffs*.

Stephen C. Norman, Jennifer C. Wasson, Tyler J. Leavengood, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Michael S. Doluisio, Carla Graff, DECHERT LLP, Philadelphia, Pennsylvania; Matthew L. Larrabee, Hayoung Park, DECHERT LLP, New York, New York; Michael D. Blanchard, Amelia Pennington, MORGAN, LEWIS & BOCKIUS LLP, Boston, Massachusetts; *Counsel for Defendants*.

**LASTER, V.C.**

The plaintiffs are stockholders of AmerisourceBergen Corporation (the "Company"). They brought this action derivatively on its behalf to recover for the harm it suffered as a result of its involvement in the opioid pandemic. The plaintiffs contended that the defendants breached the fiduciary duties they owed as officers and directors by knowingly causing the Company to suffer harm.

First, the plaintiffs contended that the officers and directors failed to protect the Company despite witnessing a steady stream of red flags indicating that the Company was violating its anti-diversion obligations under the Controlled Substances Act (the "Red-Flags Theory" or "Red-Flags Claim"). Those red flags took the form of congressional investigations, subpoenas from prosecutors, lawsuits by state attorneys general, and an eventual torrent of civil lawsuits. Meanwhile, as the opioid epidemic raged, the Company reported suspicious orders at incomprehensibly low rates. The plaintiffs contended that based on those red flags, the defendants knew that the Company was violating its anti-diversion obligations. Yet the Company's officers and directors consciously ignored the red flags and did not take any meaningful action to implement stronger systems of oversight until 2021 as part of a settlement in which they personally received releases from liability (the "2021 Settlement").

Second, the plaintiffs asserted that the officers and directors took a series of acts which, when viewed together, supported a pleading-stage inference that they knowingly pursued a business plan that prioritized profits over compliance. In *In re Massey Energy Co.*, this court made clear that "a fiduciary of a Delaware corporation cannot be loyal to a Delaware corporation by knowingly causing it to seek profit by violating the law." 2011

WL 2176479, at \*20 (Del. Ch. May 31, 2011). The plaintiffs asserted that between 2010 and 2015, the officers and directors aggressively expanded the Company's distribution networks while consciously ignoring the effect the expansion would have on the Company's anti-diversion efforts, resulting in the officers and directors knowingly causing the Company to violate the law (the "*Massey* Theory" or "*Massey* Claim"). As the decisive evidence of this illegal business strategy, the plaintiffs pointed to the 2015 implementation of a revised order monitoring program, which the officers and directors knew was designed to tank the rate of suspicious order reporting and evade the federal anti-diversion framework. The Company's officers and directors then maintained their illegal business strategy until they could obtain releases for themselves as part of the 2021 Settlement.

The defendants moved to dismiss the complaint for failing to support a reasonable inference of demand futility. The plaintiffs argued that the demand was futile because the complaint alleged facts supporting a reasonable inference that at least half of the directors in office when the lawsuit was filed faced a substantial threat of liability.

Standing alone, the avalanche of investigations and lawsuits without any apparent response until the 2021 Settlement would have supported a well-pled Red-Flags Claim. Likewise, the series of decisions that the officers and directors made would have supported a well-pled *Massey* Claim. But there was a final factor that fatally undermined the reasonableness of the inferences that the plaintiffs sought. In 2022, the United States District Court for the Southern District of West Virginia (the "West Virginia Court") issued a post-trial decision in a case brought against the Company and other major opioid distributors by the City of Huntington and the Cabell County Commission. *City of*

2

*Huntington v. AmerisourceBergen Drug Corp.* (*West Virginia Decision*), — F. Supp. 3d —, 2022 WL 2399876 (S.D.W. Va. July 4, 2022). The plaintiffs in that action sought to prove that the defendants had failed to comply with their anti-diversion obligations, thereby fueling the opioid epidemic in those localities. After a two-month trial, during which seventy witnesses testified either live or by deposition, the West Virginia Court rejected the plaintiffs' theory and found that the defendants had not violated their anti-diversion obligations. The West Virginia Court expressly found that the Company had complied with its anti-diversion obligations.

Both the Red-Flags Theory and the *Massey* Theory depended on the court being able to draw *reasonable* inferences that the officers and directors *knowingly* failed to cause the Company to comply with its anti-diversion obligations and therefore faced a *substantial* risk of liability. In light of the West Virginia Court's post-trial findings, it was not possible to draw those inferences. The court therefore held that demand was not futile and dismissed the plaintiffs' complaint. *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 2022 WL 17841215, at \*15 (Del. Ch. Dec. 22, 2022) (the "Opinion").

One week later, on December 29, 2022, the United States Department of Justice (the "DOJ") filed a complaint against the Company in the United States District Court for the Eastern District of Pennsylvania. Dkt. 44 Ex. A (the "DOJ Complaint"). The DOJ Complaint alleges that the Company violated the Controlled Substances Act "by refusing or negligently failing to report suspicious orders to [the] DEA on numerous occasions during the relevant period." *Id.* ¶ 272. The DOJ Complaint states:

3

Defendants' violations fall into four broad and non-exclusive categories: (1) failures to report orders that were suspicious because of indications that the customers placing the orders likely were facilitating diversion of controlled substances; (2) failures to report suspicious orders that breached Defendants' thresholds and were flagged, and which Defendants' reviewers rejected because they recognized that they could not dispel the suspicions raised by the orders; (3) failures to report suspicious orders that breached Defendants' thresholds and were flagged for review, but which Defendants cleared to be shipped and not reported without dispelling all suspicions; and (4) failures to report other suspicious orders that Defendants' faulty algorithms did not flag. Certain violations fall into more than one of these categories.

*Id.* The DOJ Complaint contended that the violations were "at least negligent" in light of the "pervasive problems" with the Company's compliance program. *Id.* ¶ 273.

The plaintiffs assert that the DOJ Complaint constitutes new evidence. On January 9, 2023, they filed a Motion for Relief from Judgment and Order Pursuant to Rule 60(b) (the "Motion"). This decision denies the Motion.

## I. LEGAL ANALYSIS

Court of Chancery Rule 60(b) states in relevant part:

On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

4

A court applies those criteria with two important values in mind: "the integrity of the judicial process and the finality of judgments." *Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, 1996 WL 757274, at \*1 (Del. Ch. Dec. 20, 1996) (Allen, C.). "A Rule 60(b) motion is not an opportunity for a do-over or an appeal." *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Gp. (Hldg.)*, 2012 WL 4847089, at \*5 (Del. Ch. Oct. 11, 2012), *aff'd*, 67 A.3d 373 (Del. 2013). A Rule 60(b) motion is also not "a substitute for a [Rule 59] motion for a new trial." 1 Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 4.09[d][1] at 4-47 (2d ed. 2021).

"The determination whether to grant a motion for relief pursuant to Rule 60(b) rests in the sound discretion of the trial court." *Joseph v. Shell Oil Co.*, 1985 WL 21146, at \*1 (Del. Ch. June 6, 1985). "Because of the significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted." *Epstein v. Matsushita Elec. Indus. Co., Ltd.* (*In re MCA, Inc. S'holder Litig.*), 785 A.2d 625, 635 (Del. 2001). Although not specifically identified in the rule, "[e]quitable principles may be taken into account by a court in the exercise of its discretion under Rule 60(b)." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2857 (3d ed.) Westlaw (database updated Apr. 2022) [hereinafter Wright & Miller]. The language of the rule incorporates equitable principles of fairness by calling for the court to grant relief "upon such terms as are just." Ct. Ch. R. 60(b).

The plaintiffs invoke Rule 60(b)(2) and Rule 60(b)(6). Neither provides grounds for relief.

5

**A.      Rule 60(b)(2)**

"Rule 60(b)(2) affords a disappointed litigant an opportunity to obtain judicial reconsideration of the merits of his claim on account of 'newly discovered evidence.'" *Norberg v. Sec. Storage Co.*, 2002 WL 31821025, at \*2 (Del. Ch. Dec. 9, 2002). Because of the interest in the finality of judgments, the newly discovered evidence must indicate "that an injustice is clearly threatened." *Credit Lyonnais*, 1996 WL 757274, at \*4. Plaintiffs argue that the DOJ Complaint constitutes "new, material evidence supporting the inference that [the Company's] directors face a substantial likelihood of liability under either a Red-Flag[s] Claim or *Massey* Theory." *See* Dkt. 44 at ¶ 20. That is not so.

**1.      Clarifying The Standard For A Motion Under Rule 60(b)(2)**

Two lines of Delaware authority have interpreted Rule 60(b)(2). The first addresses a scenario in which a final judgment has been entered, then a party moves for relief based on evidence discovered after the entry of the final judgment.[1] In that setting, the movant must show:

> (1) the newly discovered evidence has come to his knowledge since the judgment; (2) that it could not, in the exercise of reasonable diligence, have been discovered for use before the judgment; (3) that it is so material and relevant that it will probably change the result; (4) that it is not merely cumulative or impeaching in character; and (5) that it is reasonably possible that the evidence will be produced at the trial.

---

[1] *See, e.g.*, *Wimbledon Fund LP v. Special Situations LP*, 2011 WL 378827, at \*5 (Del. Ch. Feb. 4, 2011); *99-Year Lease Tenants v. Key Box "5" Operatives, Inc.*, 2005 WL 1924193, at \*3 (Del. Ch. Aug. 10, 2005); *Norberg*, 2002 WL 31821025, at \*2; *In re U.S. Robotics Corp. S'holder Litig.*, 1999 WL 160154, at \*10 (Del. Ch. Mar. 15, 1999).

6

*Levine v. Smith*, 591 A.2d 194, 202 (Del. 1991) (cleaned up).[2]

The second line of authority addresses a scenario in which a party seeks leave to supplement the record with newly discovered evidence *after* the close of the evidence at trial but *before* a judgment has been entered.[3] Rule 60(b)(2) does not strictly apply in that

---

[2] In *Brehm v. Eisner*, 746 A.2d 244, 253–54 (Del. 2000), the Delaware Supreme Court overruled seven precedents, including *Levine*, to the extent that they reviewed a Rule 23.1 decision by the Court of Chancery under an abuse of discretion standard or otherwise suggested deferential appellate review. *Id.* at 253 n.13 (overruling in part on this issue *Scattered Corp. v. Chi. Stock Exch.*, 701 A.2d 70, 72–73 (Del. 1997); *Grimes v. Donald*, 673 A.2d 1207, 1217 n.15 (Del. 1996); *Heineman v. Datapoint Corp.*, 611 A.2d 950, 952 (Del. 1992); *Levine*, 591 A.2d at 207; *Grobow v. Perot*, 539 A.2d 180, 186 (Del. 1988); *Pogostin v. Rice*, 480 A.2d 619, 624–25 (Del. 1984); and *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984)). The *Brehm* Court held that going forward, appellate review of a Rule 23.1 determination would be de novo and plenary. *Brehm*, 746 A.2d at 254. The seven partially overruled precedents otherwise remain good law. This decision does not rely on any of them for the standard of appellate review. Having described *Brehm's* relationship to these cases, this decision omits their cumbersome subsequent history.

More recently, the Delaware Supreme Court overruled *Aronson* and *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), to the extent that they set out alternative tests for demand futility. *United Food & Com. Workers Union & Participating Food Indus. Empls. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021). The high court adopted a single, unified test for demand futility. Although the *Zuckerberg* test displaced the prior tests, the Court stated that cases properly applying *Aronson* and *Rales* remain good law. *Id.* This decision therefore does not identify any precedents as having been overruled by *Zuckerberg*.

[3] *E.g.*, *Vianix Del. LLC v. Nuance Commc'ns, Inc.*, 2011 WL 487588, at *3 (Del. Ch. Feb. 9, 2011). This type of motion is often called a "motion to reopen the record." *See Fitzgerald v. Cantor*, 2000 WL 128851, at *1 (Del. Ch. Jan. 10, 2000) (citing *El Paso Nat. Gas Co. v. Amoco Prod. Co.*, 1992 WL 43925, at *10 (Del. Ch. Mar. 4, 1992)).

setting, because no judgment has been entered.[4] By its terms, the more appropriate

procedural vehicle is Rule 59(a), which provides that

> [a] new trial may be granted to all or any of the parties, and on all or part of the issues for any of the reasons for which rehearings have heretofore been granted in suits in equity. The Court may open the judgment if one has been entered, take additional testimony, amend or make new factual findings and legal conclusions, and direct the entry of a new judgment. A new trial will not be granted after the filing of an appeal.

Ct. Ch. R. 59(a). That rule expressly contemplates that the court may "take additional

testimony," "amend or make new factual findings and legal conclusions," and grant a new

---

[4] "Judgment" in this context is a technical term referring to an order giving rise to a right of appeal. Ct. Ch. R. 54(a) ("'Judgment' as used in these Rules includes any order from which an appeal lies."). That generally means the order constituting the trial court's last act in the case. *See, e.g.*, *Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 579 (Del. 2002) ("In short, a final judgment is one that determines all the claims as to all the parties." (internal citation omitted)); *Emerald P'rs v. Berlin*, 811 A.2d 788, 790 (Del. 2001) ("An aggrieved party can appeal to this Court, as a matter of right, only after a final judgment is entered by the trial court. 'A "final decision" is generally defined as one that ends the litigation on the merits and leaves nothing for the trial court to do but execute the judgment.'"); *Bush v. Reyes*, 2001 WL 760827, at *1 (Del. May 25, 2001) (TABLE) ("An order is deemed final and appealable if the trial court has clearly declared its intention that the order be the court's 'final act' in disposing of all justiciable matters within its jurisdiction."). The term does not refer to an interlocutory ruling nor to a post-trial decision that has not been implemented through a judgment. *See* 10 Wright & Miller, *supra*, § 2651 ("The terms 'decision' and 'judgment' are not synonymous under the federal rules. The decision consists of the court's findings of fact and conclusions of law; the rendition of judgment is the pronouncement of that decision and the act that gives it legal effect."). *Compare, e.g.*, Ct. Ch. R. 59(f) (contemplating a motion for reargument after the issuance of an "opinion" or "decision"), *with* Ct. Ch. R. 59(e) (contemplating a motion to alter or amend "the judgment"), *and* Ct. Ch. R. 60(a) (contemplating relief from a "judgment" or "order"). Under the Federal Rules of Civil Procedure, Rule 58 governs the entry of judgments and provides detailed instructions regarding when and how judgment is entered. Court of Chancery Rule 58 is not comparable. It states only that "[t]he order of the Court shall constitute the judgment of the Court." Ct. Ch. R. 58. That laconic framing understandably breeds confusion.

trial "on all or part of the issues." *Id.* Those options encompass all that is necessary to supplement the record.

The time to move for a new trial under Rule 59(a) logically begins when trial begins and continues until "10 days after the entry of judgment," when the period for seeking relief under Rule 59(a) expires. Ct. Ch. R. 59(b). Rule 59(a) is thus the proper vehicle for supplementing or reopening the record before judgment is entered (or within the first ten days after its entry). Yet our decisions have not relied on Rule 59(a), seemingly interpreting that rule as being available only for a ten-day window beginning after the entry of judgment, rather than for the longer period that begins with the end of trial and ends ten days after the entry of judgment. *See Vianix*, 2011 WL 487588, at *2 (asserting that Rule 59(a) was not "directly on point" where "the motion [to supplement the record] does not seek a new trial and [the court had] not yet entered a final judgment"). To read the rule as only creating a momentary aperture that opens upon entry of judgment and closes ten days later is erroneous. *See* Wright & Miller, *supra*, § 2812 ("Rule 59(b) sets a maximum time for filing new-trial motions; there is nothing to prevent making a motion for a new trial before judgment has been entered, however."). The period in which to move for a new trial starts when trial starts. The period ends ten days after the entry of judgment. During that period, a party can rely on Rule 59(a) to seek a new trial. During the time before judgment is entered, a party can invoke Rule 59(a) as a procedural vehicle to supplement the record.

Believing Rule 59(a) to be unavailable until after judgment is entered, this court sought to fill the resulting gap by invoking its inherent authority and looking to Rule 60(b)(2) as "both analogous and instructive." *Vianix*, 2011 WL 487588, at *3. And when

9

doing so, this court went beyond the *Levine* factors by introducing two additional considerations: (i) whether undue prejudice will inure to the nonmoving party and (ii) considerations of judicial economy. *Carlson v. Hallinan*, 925 A.2d 506, 520 (Del. Ch. 2006), *opinion clarified*, 2006 WL 1510759 (Del. Ch. May 22, 2006). As assembled in *Carlson*, the full list reads:

> Among the factors the Delaware courts have considered in deciding [a motion to reopen the record] are (1) whether the evidence has come to the moving party's knowledge since the trial, (2) whether the exercise of reasonable diligence would have caused the moving party to discover the evidence for use at trial, (3) whether the evidence is so material and relevant that it will likely change the outcome, (4) whether the evidence is material and not merely cumulative, (5) whether the moving party has made a timely motion, (6) whether undue prejudice will inure to the nonmoving party and (7) considerations of judicial economy.

*Id.* at 520. Oddly, the *Carlson* decision did not draw the first five factors from *Levine*, but rather concatenated them from other Court of Chancery decisions. *See id.*

When appending the last two factors, the *Carlson* court drew on *Fitzgerald v. Cantor*, 2000 WL 128851 (Del. Ch. Jan. 10, 2000), and *Kahn v. Tremont Corp.*, 1997 WL 689488, at *5 (Del. Ch. Oct. 28, 1997). In *Fitzgerald*, the defendants sought to reopen the record so the court could take judicial notice of a filing with the United States Securities and Exchange Commission. The court denied the motion "[a]fter balancing the relative impact of this proposed new evidence against considerations of further delay in disposition of this case, the unfair prejudice caused to plaintiff by its concomitant need for further development of the record in order to meet defendants' interpretation of the evidence and the necessary additional commitment of judicial resources." 2000 WL 128851, at *1. That was the only time that the concepts of "unfair prejudice" and "judicial resources" appeared

10

in the decision, and the court did not provide reasoning or authority for adding them as considerations. The motion already merited denial, because the court separately concluded that the SEC filing did not constitute newly discovered evidence. In *Tremont*, the court considered whether to admit new evidence on remand following a reversal by the Delaware Supreme Court. 1997 WL 689488, at \*5. Relying on federal precedent that spoke to that setting, the court stated that it "must weigh several factors, including: (i) the burden placed on the parties and their witnesses; (ii) whether undue prejudice will result by not taking new testimony; and (iii) what considerations should be given to judicial economy." *Id.* That is a wholly different, three-factor test that substitutes grander and more flexible concepts for the five specific factors identified in *Levine*. Neither *Fitzgerald* nor *Tremont* support appending two additional considerations to *Levine*'s five-factor test.

Because both the *Levine* list and the *Carlson* list are associated with Rule 60(b)(2), they are easy to confuse. A party opposing relief under Rule 60(b)(2) generally will find it advantageous to embrace the seven factors from *Carlson* because the issues of undue prejudice and judicial economy provide additional bases for opposing the motion. But if factors (1) through (5) are satisfied, is there a setting when the risk of undue prejudice and judicial economy could carry the day? At that point, the court will have determined that newly discovered evidence exists that the moving party could not have found earlier, which the moving party has raised in timely fashion, and which is noncumulative and likely to change the result. When those factors are present, they would seem to outweigh the risk of undue prejudice and the desire for judicial economy, creating a context where concern for the integrity of the judicial process outweighs the otherwise significant interest in the

11

finality of judgments. *See Credit Lyonnais*, 1996 WL 757274, at *1. Such a case is one where "injustice is clearly threatened," warranting relief under Rule 60(b)(2). *Id.* at *4.

The factors that the Delaware Supreme Court identified in *Levine* accurately state the requirements that a movant must meet to prevail on a motion under Rule 60(b)(2). The two additional factors from *Carlson* should not be part of the test. To the extent that unique circumstances require additional consideration, then a court can take those matters into account when determining whether to grant relief "upon such terms as are just." Ct. Ct. R. 60(b); *see* Wright & Miller, *supra*, § 2857 (explaining that a court can take into account "equitable considerations" when granting relief under Rule 60(b)).

### 2. Applying The Standard For A Motion Under Rule 60(b)(2)

Under *Levine*, the plaintiffs must show that (1) the DOJ Complaint constitutes newly discovered evidence that has come to the plaintiffs' knowledge since the entry of judgment; (2) the DOJ Complaint could not have been discovered before the judgment through the exercise of reasonable diligence; (3) the DOJ Complaint is sufficiently material and relevant that it would probably change the outcome; (4) the DOJ Complaint is not merely cumulative or impeaching in character; and (5) it is reasonably possible that the evidence will be produced at the trial.

No one disputes that the DOJ Complaint did not exist when the court entered the judgment, meaning that the plaintiffs could not have discovered it before the judgment through the exercise of reasonable diligence. Whether the DOJ Compliant will be admissible at trial depends on the purpose for which it is introduced, and legitimate purposes plainly exist. The pivotal issues are elements one, three, and four.

12

### a. Element One: Is The DOJ Complaint Newly Discovered Evidence?

The plaintiffs argue that the DOJ Complaint is newly discovered evidence. The DOJ Complaint is plainly "evidence," although whether it is admissible at trial depends on how the plaintiffs seek to use it. The real question for purposes of the first element is whether the evidence was "newly discovered." The answer to that question would seem obvious— the DOJ Complaint was not filed until after judgment was entered, but the law draws a distinction between "new" evidence and "newly discovered" evidence. The latter can support a Rule 60(b)(2) motion. The former cannot.

The leading Delaware decision on this issue is *Bachtle v. Bachtle*, 494 A.2d 1253 (Del. 1985), where the Delaware Supreme Court considered whether the Family Court abused its discretion in refusing to reopen a judgment dividing real property after a divorce. During the proceeding, the husband and wife each presented expert testimony regarding the valuation of the marital residence. *Id.* at 1255. The wife's expert appraised the residence at between $172,000 and $195,000, and the husband's expert appraised the residence at $150,000. The Family Court valued the residence at $150,000 and awarded it to the husband. Approximately nine months later, the husband sold the residence for $218,000. Approximately ten months after that, the wife petitioned the Family Court to reopen the judgment so that the sale price of the house could be included in a modified distribution of marital property. The Family Court denied the motion.

On appeal, the Delaware Supreme Court started its analysis with a statute providing that a property disposition may be modified or terminated "only upon a showing of

13

circumstances that would justify the opening or vacation of a judgment under the Rules of the Superior Court of this State . . . .” 13 *Del. C.* § 1519(a)(3). The high court therefore turned to Superior Court Civil Rule 60(b)(2), which permits relief from a judgment for “newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).” Super. Ct. R. 60(b)(2). Because the sales price for the property “was not in existence at the time of judgment,” the valuation constituted “‘new evidence,’ not ‘newly discovered evidence.’” *Bachtle*, 494 A.2d at 1255.

In reaching this conclusion, the *Bachtle* decision relied on federal precedent interpreting the concept of “newly discovered evidence” to mean evidence “‘in existence and hidden at the time of judgment.’”[5] Federal courts continue to apply that rule. *E.g.*, *ChromaDex, Inc. v. Elysium Health, Inc.*, 2021 WL 1648596, at *1 (D. Del. Apr. 27, 2021); 11 Wright & Miller, *supra*, § 2808 (“As is true under Rule 60(b)(2), in order to comply

---

[5] *Id.* (quoting *Ryan v. United States*, 303 F.2d. 430, 434 (2d Cir. 1962); citing *Brown v. Pennsylvania R.R. Co.*, 282 F.2d 522, 526–527 (3rd Cir. 1960) (defining “newly discovered evidence” to mean “evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant”) (internal citation omitted), *cert. den.*, 365 U.S. 818 (1961)); *accord United States v. Rutkin*, 208 F.2d 647, 649–650 (3rd Cir. 1953) (“The United States and Rutkin have agreed that to warrant the granting of a new trial on the ground of newly discovered evidence, ‘There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.’” (quoting *Johnson v. United States*, 32 F.2d 127, 130 (8th Cir. 1929)).

14

with Rule 59, the court must find that the newly discovered evidence itself, as well as the facts that it supports, were in existence at the time of trial.").

Under the *Bachtle* decision, Rule 60(b)(2) does not apply to "new" as opposed to "newly discovered" evidence.[6] The valuation in *Bachtle* met that definition because the sale had not taken place at the time of judgment. The transaction occurred afterward, making the sale price a new fact. At a superficial level, the DOJ Complaint seems to fit that mold, because when the court entered the judgment in this case, the DOJ had not filed suit yet.

On another level, however, the DOJ Complaint differs from the sale of the residence in *Bachtle*, because the DOJ Complaint refers to historical events predating the judgment. While serving as a member of this court, Justice Jacobs dealt with a similar situation in *Grobow v. Perot* (*Grobow III*), 1988 WL 127094 (Del. Ch. Nov. 25, 1988). After then-

---

[6] Although *Bachtle* considered Superior Court Civil Rule 60(b)(2), its holding applies equally to Chancery Court Rule 60(b)(2), which is substantively identical. *See Sullivan v. Maughan*, 608 A.2d 730 (Del. 1991) (treating Family Court Civil Rule 60(b), Superior Court Rule 60(b), and Court of Chancery Rule 60(b) as substantively identical "counterparts"); *see also Cheswold v. Cent. Del. Bus. Park*, 2017 WL 2463689, at *4 (Del. Super. Ct. June 6, 2017) ("The language found in Rule 60(b) is identical in both the Court of Chancery and the Superior Court Civil Rules."), *rev'd on other grounds*, 188 A.3d 810 (Del. 2018); *In re U.S. Robotics Corp. S'holder Litig.*, 1999 WL 160154, at *8 (Del. Ch. Mar. 15, 1999) (same)); *cf.* Daniel L. Herrmann, *The New Rules of Procedure in Delaware*, 18 F.R.D. 327, 327–28 (1956) (discussing Rule 60(b) without distinguishing between the Superior Court and the Chancery Court versions). The two versions are not precisely identical, because Superior Court Civil Rule 60(b)(2) authorizes relief from judgment for "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)," while the Court of Chancery Rule refers more parsimoniously to "newly discovered evidence." The meaning of the two versions is undoubtedly the same.

15

Vice Chancellor Jacobs dismissed the complaint, the plaintiffs sought relief from judgment under Rule 60(b)(2) based on a tell-all book published after the dismissal of the complaint, as well as post-dismissal depositions taken in related litigation. *Id.* at *1. No one suggested that the post-judgment book and depositions were new evidence, as opposed to newly discovered evidence about events that preceded the judgment. Then-Vice Chancellor Jacobs granted the motion. *Id.* at *4. The *Grobow III* decision indicates that when a plaintiff seeks to rely on evidence about pre-judgment events, it constitutes newly discovered evidence for purposes of Rule 60(b)(2), even if the evidence takes form after the judgment.

These precedents point to a distinction between the filing of the DOJ Complaint and the contents of the DOJ Complaint. To the extent the plaintiffs seek to rely on the filing of the DOJ Complaint as evidence of the DOJ's belief in the strength of its allegations, the DOJ Complaint is "new evidence" that cannot support relief under Rule 60(b)(2). That is because the filing itself took place after the judgment. To the extent the plaintiffs rely on the contents of the DOJ Complaint, the DOJ Complaint constitutes newly discovered evidence about past events that can be considered for purposes of Rule 60(b)(2). That is because although the form of the evidence manifested itself after the judgment, it relates to events that predated the judgment.

### b. Element Three: Is The DOJ Complaint Sufficiently Material To Change The Result?

To the extent the DOJ Complaint constitutes newly discovered evidence, the third element requires a showing that the DOJ Complaint is so material as to change the result. *Credit Lyonnais*, 1996 WL 757274, at *1. The DOJ Complaint does not meet this standard.

16

When determining whether to dismiss a complaint under Rule 23.1, a court evaluates whether the complaint's allegations identify "with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Ct. Ch. R. 23.1(a). The requirement of particularized facts means a "[p]laintiffs' pleading burden [in the demand excused context] is . . . more onerous than that required to withstand a Rule 12(b)(6) motion." *Levine*, 591 A.2d at 207. Under the heightened pleading requirements of Rule 23.1, "conclusionary [sic] allegations of fact or law not supported by allegations of specific fact may not be taken as true." *Grobow*, 539 A.2d at 187. But the requirement of factual particularity does not entitle a court to discredit or weigh the persuasiveness of well-pled allegations. "Plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Brehm*, 746 A.2d at 255. Rule 23.1 requires that a plaintiff allege specific facts, but "he need not plead evidence." *Aronson*, 473 A.2d at 816; *accord Brehm*, 746 A.2d at 254 ("[T]he pleader is not required to plead evidence.").

The Opinion applied that standard. The Opinion acknowledged and accepted as true the plaintiffs' allegation that the Company had been "named as a defendant in more than 1,800 lawsuits" by governmental entities and other plaintiffs. Compl. ¶ 6. The Opinion also credited that the Company had been the subject of numerous governmental investigations, including "a long running and expanding U.S. Department of Justice ('DOJ') civil and criminal investigation." *Id.* The Opinion acknowledged that the complaint's allegations,

17

standing alone, were sufficient to support an inference that the directors knew that the Company's existing anti-diversion systems were inadequate and consciously decided not to take any action in response to the red flags.

The challenge was whether the inferences were reasonable. In the *West Virginia Decision*, the West Virginia Court found on the merits after a lengthy trial that the Company had established and maintained an adequate anti-diversion program. *West Virginia Decision*, 2022 WL 2399876, at *61. The West Virginia Court found no evidence that the Company distributed opioids to pill mills. *Id.* at *53. Based on its findings, the West Virginia Court ruled that "[n]o culpable act by defendants caused an oversupply of opioids in Cabell/Huntington." *Id.* at *61.

Given the findings in the *West Virginia Decision*, the court could not draw a reasonable pleading-stage inference that the defendants had acted in bad faith in failing to cause the Company to comply with its anti-diversion obligations. The pled facts supported that inference, but the West Virginia Court's post-trial findings rendered that inference unreasonable.

The plaintiffs do not assert that the DOJ Complaint contains materially new information, and they acknowledge that the existence of another lawsuit is unlikely to change the outcome of the Opinion. Dkt. 53 ¶ 6. They argue that "the U.S. Government's ***decision*** to pursue an enforcement action, based on the conclusion of multi-year investigations, flips the inferences supporting the Opinion." *Id.* (formatting in original) (footnote omitted). In other words, they contend that because the DOJ decided to file the DOJ Complaint, after the issuance of the *West Virginia Decision*, it remains reasonable to

18

infer that the defendants knowingly failed to cause the Company to comply with its anti-diversion obligations. But as previously discussed, the act of filing the DOJ Complaint is new evidence, not newly discovered evidence. It therefore cannot be considered for purpose of the plaintiffs' application for relief under Rule 60(b)(2).

To the extent the plaintiffs rely on the contents of the DOJ Complaint, rather than the act of filing, those allegations would not change the outcome. The plaintiffs recognize that the contents of the DOJ Complaint largely parallel their complaint. And the allegations remain allegations, so they cannot support reasonable inferences in the face of the factual findings made by the West Virginia Court.

Finally, the DOJ Complaint's allegations do not otherwise address the issues pertinent to demand futility. The DOJ Complaint does not mention the individual defendants, and it contains no allegations supporting an inference that the Company's directors knowingly took action that would support a Red-Flags Claim or a *Massey* Claim. The DOJ Complaint rests on theories that require no greater level of culpability than negligence.

The West Virginia Court made findings of fact. The allegations in the DOJ Complaint, even recognizing that it was filed by the DOJ, do not support reasonable inferences of noncompliance under the particularized pleading standard required by Rule 23.1. Considering the contents of the DOJ Complaint would not change the result.

### c. Element Four: Is The DOJ Complaint Cumulative?

Element four of the Rule 60(b)(2) test requires that the plaintiff show that the DOJ Complaint is not cumulative. They cannot make that showing.

19

As this decision has discussed, a reference to the DOJ Complaint bundles two events: the filing of the complaint and the contents of the complaint. The filing of the DOJ Complaint is not cumulative. It is a new event, so it is new evidence, not newly discovered evidence. It therefore cannot be considered for purposes of Rule 60(b)(2).

The contents of the DOJ Complaint qualify as newly discovered evidence, but the evidence is cumulative. The DOJ Complaint covers the same general timeline as the plaintiffs' complaint and describes many of the same events discussed in the Opinion.

### d. The Conclusion Regarding The Rule 60(b)(2) Test

The *Levine* test governs, and the Motion fails to satisfy it. The act of filing the DOJ Complaint is new evidence, not newly discovered evidence, and cannot be considered. The contents of the DOJ Complaint qualify as newly discovered evidence, but the information would not change the outcome because it is cumulative. The request for relief under Rule 60(b)(2) is therefore denied.

## B. Rule 60(b)(6)

Plaintiffs argue in the alternative that the court should grant the Rule 60(b) motion under the catchall provision of Rule 60(b)(6), which permits the court to grant relief from judgment "for any other reason." Ct. Ch. R. 60(b)(6). A party moving under Rule 60(b)(6) must carry a heavier burden than under other subdivisions of Rule 60(b). *See, e.g.*, *MCA*, 785 A.2d at 635 n.9. For purposes of Rule (b)(6), a plaintiff must identify "extraordinary circumstances." *Dixon v. Delaware Olds, Inc.*, 405 A.2d 117, 119 (Del. 1979); *accord* 11 Wright & Miller, *supra*, § 2857.

20

Plaintiffs argue that "compelling policy considerations further support withdrawal of the Opinion under Rule 60(b)(6)" because the Opinion is "out of step with established jurisprudence." Dkt. 44 ¶ 32. The gist of the plaintiffs' objection is that the court considered the *West Virginia Decision* after the defendants raised it in their reply brief and after the parties discussed it at oral argument. According to the plaintiffs, such an approach departs from the rule that the demand futility analysis considers the directors in office at the time the complaint is filed. It also allegedly "improperly shifts the point in time that the futility determination must be made from the date of filing of the [plaintiffs] Complaint to a later point in time, or alternatively, allows a 'floating' assessment time, subject to reevaluation depending on changing circumstances.'" *Id.* ¶ 33.

The Opinion did not deviate from the principle that demand futility is evaluated using the directors in office when the complaint was filed. That is exactly what the Opinion did. By considering the *West Virginia Decision*, the court did not look to a different set of directors. The court considered whether it was reasonable to draw an inference that the directors in office when the complaint was filed faced a substantial risk of liability.

The plaintiffs fare no better with their argument that by considering the *West Virginia Decision*, the court moved the date at which demand futility is considered. That is not the case. Like the plaintiffs' complaint and the DOJ Complaint, the *West Virginia Decision* looked backward. The West Virginia Court made findings about what the Company historically had done. The West Virginia Court found that no wrongdoing had occurred. Based on that finding, the court could not reasonably infer that the demand board faced a substantial risk of liability for the same conduct.

21

The court acted properly by considering the *West Virginia Decision*. Other Delaware decisions have considered post-complaint developments.[7] Under Delaware Rule of Evidence 202, "[e]very court in this State may take judicial notice of . . . case law of the United States and every state, territory and jurisdiction of the United States." D.R.E. 202(a)(1). The comments to the rule state:

> It is the intention of this rule to encourage the admissibility of evidence of law rather than to discourage it. The only limitation imposed is that notice of the law of other jurisdictions sought to be relied upon should be given to all parties at a reasonable time.

D.R.E. 202 cmt. "The court may take judicial notice at any stage of the proceeding." D.R.E. 201(d). Both sides were on notice of the *West Virginia Decision*. The defendants raised it in their reply, and both sides addressed it at oral argument. Dkt. 33 at 6, 7, 10; Dkt. 40 at 28–29, 40, 86–87.

Although considering the *West Virginia Decision* worked against the plaintiffs in this case, there is no reason to think that taking judicial notice of a post-filing development will systematically favor one side or the other. Suppose the West Virginia Court had ruled against the Company. One can be confident that the plaintiffs would have eagerly called the case to the court's attention and argued that the court should consider it for purposes of

---

[7] *See, e.g.*, *Fisher v. Sanborn*, 2021 WL 1197577, at *12 (Del. Ch. Mar. 30, 2021) (considering regulatory investigations that post-dating the filing of the complaint as part of demand futility analysis); *Rojas v. Ellison*, 2019 WL 3408812, at *6 (Del. Ch. July 29, 2019) (considering a ruling by California appellate court that post-dated the filing of the complaint as part of demand futility analysis).

the Rule 23.1 analysis. This time, the plaintiffs' ox was gored. Next time, the beast could belong to the defendants.

The plaintiffs' real gripe is that their complaint was dismissed. There is nothing extraordinary or exceptional about that result. It also does not mean the Company cannot potentially recover from the individual defendants. The named plaintiffs in this case have taken their shot, but as contemplated by Rule 15(aaa), the court's judgment only binds the named plaintiffs. If the *West Virginia Decision* is reversed on appeal, or if the DOJ prevails at trial, or if other potential events come to pass, then a future plaintiff may be able to assert viable derivative claims notwithstanding the Opinion. That ruling is not a panacea for the individual defendants, and it did not exonerate them or the Company.

There is no basis to think that the consideration of the *West Virginia Decision* constituted an extraordinary circumstance supporting relief under Rule 60(b)(6). The request for relief under Rule 60(b)(6) falls well short of the mark.

## II. CONCLUSION

The DOJ Complaint does not provide grounds for granting relief from the judgment. The Motion is denied.